Dear Mr. Weatherford:
You have requested an opinion of the Attorney General on several questions addressing the fiscal and custodial responsibilities of the Allen Parish Police Jury for parish prisoners. Specifically, you want to know if the Allen Parish Police Jury is obligated to pay for prisoners transferred to other parishes, when the Allen Parish Sheriff who transferred the prisoners failed to follow the procedure outlined in La.R.S. 15:764. You also want to know how the daily rate for the maintenance of Allen Parish prisoners transferred to other parishes should be determined, in light of La.R.S. 15:706(B). You state that the Police Jury has been billed approximately twenty-five dollars per day per prisoner by sheriffs from other parishes and that the rate was set by a verbal agreement apparently negotiated by and between the Allen Parish Sheriff and the sheriffs of these other parishes.
 Parish Governing Authority's Obligation to Pay for Parish Prisoners
This Office has consistently opined that it is the duty of the parish governing authority, in this case the Allen Parish Police Jury, to pay for the cost of food, clothing, housing, medical care, and all other expenses associated with sustaining parish prisoners. See La. Atty. Gen. Op. Nos. 89-234, 90-17, 92-157 and 06-0029. This determination is supported by Louisiana law and jurisprudence. Specifically, La.R.S. 33:4715 provides, in pertinent part, that the police jury of each parish shall provide a good and sufficient jail. Pursuant to La.R.S. 15:704, the sheriff of each parish, as chief law enforcement officer of the parish, is statutorily charged with the responsibility of being the keeper of the public jail of the parish and is further charged, pursuant to La.R.S. 15:705, with the feeding and clothing of prisoners. *Page 2 
The seminal case addressing the interplay of these statutes isAmiss v. Dumas, 411 So.2d 1137 (La. App. 1 Cir. 1982), writdenied, 415 So.2d 940 (La. 1982). There, the court determined that these statutes dictate that the parish governing authority has the responsibility for funding the establishment, maintenance, and operation of the parish jail and is obligated to pay all costs incurred in operating the parish jail and in housing, keeping, and feeding parish prisoners and pre trial detainees. The Amiss
decision states:
The general scheme which we gather from a reading of all of the statutes is that the City-Parish is responsible for the expenses of establishing, maintaining and operating the jail and for all the expenses of feeding, clothing, and providing medical treatment to the prisoners while the sheriff has the duty of operating the jail and seeing to it that the prisoners are properly cared for, fed and clothed.
These statutes, in effect, establish that prisoners incarcerated in the parish jail, either awaiting trial or service of parish sentences, are wards of the parish and the sheriff is simply the warden ("keeper") of the parish jail.
Amiss, 411 So.2d at 1139; see also La.R.S. 15:566;15:702; 15:703; 15:704; 15:705; 33:1432; and 33:4715.
Because the sheriff is the keeper of the public jail of his parish, it is his duty to accept all prisoners arrested within his parish and charged with state crimes, whether felony or misdemeanor.See La.R.S. 15:704. However, if the parish jail has a population limit set by a state or federal court, our office has previously concluded that such limit cannot be exceeded without court approval. See La. Atty. Gen. Op. No. 81-413.
In the event that incarceration of a person would cause the population limit to be exceeded there, the Sheriff must, with respect to those persons arrested and charged with state crimes, either incarcerate them in other places in or out of the parish, or make special arrangements with other officials or agencies for bonding procedures, release on recognizance, summonsing, or any other method pursuant to state law which would allow him to perform his duties with the framework of the court-ordered population limit.
La. Atty. Gen. Op. No. 81-413.
This previous opinion indicates that the obligation to find a cell rests with the sheriff. This position also is supported by the language of La.R.S. 15:706, which provides that "whenever the jail of a parish is unsafe or unfit for the security of *Page 3 
prisoners . . . or presents a security risk . . . the sheriff of the parish maintaining and keeping the prisoner or prisoners may transfer any prisoner or prisoners to the jail or jails of any other parish by written contract with the sheriff of the other parish." The sheriff to whom the transfer of the prisoner or prisoners is made shall receive compensation for the maintenance of such prisoners. See La.R.S. 15:706(B).
In the opinion request provided to our office, you state that the sheriff transferred prisoners to other parishes without following the procedure set forth in La.R.S. 15:764 La.R.S. 15:764 governs parish jail overcrowding and provides as follows:
A. If the prisoner population of a parish jail exceeds the rated design capacity of the parish jail for seven consecutive days, the sheriff of that parish shall certify that in writing, by first class mail or personal delivery, to each district, municipal and traffic court judge in the parish, to the district attorney and the chief of police of any municipality within the parish, and to the senior official of the parish governing authority. If this condition exists for seven consecutive days after notification of said officials, the sheriff shall declare a parish jail overcrowding state of emergency and shall notify such officials.
B. After the declaration of emergency is made . . . the sheriff may reduce the overcrowding in the parish jail by any or all of the following means:
(1) The substitution of appearance tickets or summons for booking at the parish jail and the release or furlough of pre-trial arrestees, based on factors included in Code of Criminal Procedure Article 317 and on any other factors related to public safety or the likelihood of court appearance, however only persons charged with violations of municipal ordinances which are nonviolent offenses shall be eligible for such release.
(2) The furlough of individuals who have been convicted under municipal ordinance for nonviolent offenses are within one year of release.
The grounds for the transfer of prisoners from Allen Parish are not clear from the facts provided with your inquiry. Nevertheless, as discussed above, La.R.S. 15:704 confers upon the sheriff the power to be "the keeper of the public jail of his parish." While this statute does not specifically include the authority to *Page 4 
declare the jail "unsafe or unfit," such authority would seem to be within the sheriff's inherent power to operate the jail and to insure that the prisoners are properly cared for, fed and clothed.See Langley v. City of Monroe,582 So.2d 367 (La. App. 2 Cir. 1991); See also
La. Atty. Gen. Op. No. 05-0230. In State ex rel. Matthews v.Henderson, 292 So.2d 496, 498 (La. 1974), the Louisiana Supreme Court upheld the action of the trial court wherein the trial judge said that the crowded condition of the parish jail constitutes a security risk. It can be inferred under Henderson that when a parish jail reaches its maximum occupancy, the addition of more prisoners would present a security risk, and pursuant to La.R.S. 15:706, it becomes the responsibility of the sheriff to find other cells for the additional prisoners.
In this case, if the sheriff determined that the jail was unsafe and unfit, La.R.S. 15:706 gives the sheriff the statutory authority to transfer inmates. This office has previously opined that a sheriffs declaration that a parish jail is unsafe or unfit is binding upon the police jury or other governing authority.See La. Atty. Gen. Op. No. 05-0230.
Therefore, a failure to follow the notice procedure set forth in La.R.S. 15:764 would not excuse the Allen Parish Police Jury from being obligated to pay for prisoners transferred to other parishes. However, if the sheriff allegedly failed to follow La.R.S. 15:764, the Police Jury can conceivably take legal action to compel compliance with the mandatory notice provisions found in subsection (A) of the statute, but not the discretionary provisions of subsection (B). See La.C.C.P. art. 3863 (a writ of mandamus may only compel a ministerial duty); see also Charterschool of Pine Grove v. St. Helena Parish School Board, 2007-2238, 9 So.3d 209, 221 (La. App. 1 Cir. 2/19/2009) ("The remedy of mandamus is not available to command performance of an act that contains any element of discretion, however slight.").
Despite the recourse that might conceivably be taken by the Police Jury for the sheriff's failure to follow the notice provisions of La.R.S. 15:764, this office is of the opinion that the Allen Parish Police Jury would, in any event, still be responsible to pay for the keeping of parish prisoners in other parishes. This position is supported by La.R.S. 15:304, which provides in pertinent part that:
All expenses incurred in the different parishes of the state . . . by the arrest, confinement, and prosecution of persons accused or convicted of crimes, their removal to prison, the pay of witnesses specifically provided by law, jurors and all prosecutorial expenses whatever attending criminal proceedings shall be paid by the respective parishes in which the offense charged may have been committed or by the city of New Orleans, as the case may be. *Page 5 
The Supreme Court discussed the legislative intent behind La.R.S. 15:304 in State v. Mejia, 197 So.2d 73 (La. 1967), and noted that it is obvious that "when the legislature enacted Article 529.8 it intended to put at rest the confusion which would attend the payment of expenses incurred by several parishes in dealing with the same case."[1] The court held that the parish where the crime is committed must reimburse other parishes incurring expenses in the case. Id. Thus, even if the sheriff did not follow the notice procedures outlined in La.R.S. 15:764 before transferring Allen Parish prisoners to other parishes, the statutory provisions, case law, our prior opinions, and the clear legislative intent all support the Police Jury's obligation to pay expenses for Allen Parish prisoners.
 Daily Per Diem Owed for ParishPrisoners
You indicate that agreements apparently exist between the Allen Parish Sheriff and other sheriffs for the housing of Allen parish inmates in these other parishes for specified per diem payments of around twenty-five dollars per inmate per day.[2]
La.R.S. 15:706(B) requires a written contract between the sheriffs where inmates are to be transferred from one parish to another for housing. The facts you provided to our office indicate that there was a verbal agreement but no written contract between the various sheriffs involved. However, we believe the parish has the obligation of bearing the financial burden of housing the parish inmates, whether within Allen Parish facilities or elsewhere, and it therefore received a benefit from the other sheriffs' actions in housing the Allen Parish inmates. We are of the opinion that, at a minimum, the verbal agreement that exists between the sheriffs under these circumstances makes the police jury financially responsible for expenses for its prisoners that are transferred to other parishes by the sheriff. This responsibility of the parish governing authority to pay for housing its inmates at facilities other that its parish jail, however, goes beyond contractual requirements.See also La.C.C. art. 2298.
La.R.S. 15:706(B) provides that the sheriff to whom the transfer of the prisoner or prisoners is made shall receive for the maintenance of such prisoner or prisoners, the same compensation authorized by law for the keeping and feeding of prisoners which shall be paid by the parish transferring the prisoner or prisoners. It is important to note that the phrase "shall be paid" found in La.R.S. 15:706(B) creates a mandatory duty, placing upon the parish governing authority a mandatory obligation to pay the statutorily prescribed compensation for the keeping and feeding of prisoners, regardless of the parish or facility in which they are held *Page 6 
The statute setting forth the obligation of the governing authority to compensate a sheriff for the keeping and feeding of prisoners, is La.R.S. 33:1432. That statute states, in pertinent part, that the sheriff is to receive "[f]or keeping and feeding of prisoners in jail not less than three dollars and fifty centsper diem for each prisoner." This statute creates a minimum payment, and has been consistently interpreted to provide that "if the cost exceeds that amount the parish is responsible for that excess cost." La. Atty. Gen Op. No. 94-18; citing Amiss,supra. Thus, this office has concluded that a police jury must pay "all the costs" associated with the keeping of a prisoner in any facility other than the parish jail. Id.
This result is reached by reading R.S. 15:706 and R.S. 33:1432 together with the judicial interpretations referenced above. Under this authority, we have in the past concluded that the sheriff of the parish in which the prisoner is being housed is entitled to be paid the amount negotiated by the home parish sheriff when prisoners are subject to inter-parish transfer. See
La. Atty. Gen. Op. No. 05-0237 There, this office opined that the home parish sheriff "had latitude to negotiate for what it would cost to `keep' the transferred prisoners." Id. Moreover, we observed that "the East Carroll Sheriff in negotiating the amount to be paid to the outside parish prisons did not have to limit the cost of keeping and feeding prisoners to be transferred to the amount set forth in the parish ordinance dealing with the issue." Id.
In Opinion Number 05-0237 we addressed questions arising out of the housing of East Carroll Parish prisoners and pre trial detainees at jail facilities outside of East Carroll Parish. The East Carroll Parish Sheriff had agreed with other parish sheriffs on a per diem of twenty-three dollars per inmate per day for housing the East Carroll inmates with other parish sheriffs. The East Carroll Police Jury then passed an ordinance limiting the payments to other parishes housing East Carroll inmates to four dollars and fifty cents per prisoner per day and asked whether it could limit the amount paid to the other parish sheriffs to the ordinance amount or whether it would have to pay the higher rate negotiated and agreed to by the East Carroll Sheriff.
In responding to the questions presented by the East Carroll Parish Police Jury in Opinion Number 05-0237, this office looked to R.S. 15:706 and 33:1432, along with the Amiss decision and our own prior opinions, for guidance and concluded that the East Carroll Parish Police Jury was obligated to pay theper diem rate negotiated by the sheriffs for the keeping of East Carroll parish inmates in other parish jails, and could not by ordinance limit its obligation to pay the out-of-parish costs. As a result, we concluded that "the police jury would be obligated to pay a bill submitted by another parish [sheriff] for housing transferred inmates that exceeds the amount of the parish ordinance [,which itself exceeded the minimum statutory per diem
of R.S. 33:1432(1)]." *Page 7 
This conclusion fits in line with Amiss and prior opinions of this office which concluded that because the governing authority of a parish is responsible for the expenses of operating a jail, if the cost of caring for the parish prisoners outside of the home parish exceeds the per diem paid for housing those inmates in the home parish, then the governing authority of the home parish is responsible for the excess cost. Amiss, 411 So.2d 1137, 1141; see also La. Atty. Gen. Op. Nos. 06-0029; 77-43; 87-493;and 94-18. Louisiana Revised Statute 15:304, which is discussed in greater detail above, also supports this conclusion.
Thus, we are of the opinion that the Allen Parish Police Jury is responsible for paying the cost of housing, keeping, and feeding its parish prisoners and pre trial detainees in a facility other than the Allen Parish Jail. The per diem amount that should be paid by the Police Jury under these circumstances is the amount set by the agreement between the sending and receiving sheriffs. If the parish sheriff accepting the transferred prisoners has agreed with the Allen Parish Sheriff on a per diem cost figure that exceeds the $3.50 per diem established by La.R.S. 33:1432 and is more than the amount Allen Parish would pay to the Sheriff of Allen Parish for the housing of Allen Parish inmates in the Allen Parish Jail, the Allen Parish Police Jury is still responsible for that higher cost. See Amiss, supra.
We hope that this information sufficiently answers your inquiry. If we can be of further assistance, please do not hesitate to contact us.
With Best Regards,
JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
By: __________________________ Angelique Duhon Freel Assistant Attorney General
JDC:ADF
[1] La.R.S. 15:529.8 is the prior law governing this subject matter before La.R.S. 15:304.
[2] This opinion does not address what impact, if any, La.Const. art. VII, § 14 may have on any per diem rate negotiated by and between sheriffs.